

**FILED**

MAY 0 6 2016

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:15-CR-30070-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER REGARDING DEFENDANT'S COMPETENCY TO STAND TRIAL |
| CORBYN BIG EAGLE, | |
| Defendant. | |

After Defendant Corbyn Big Eagle was indicted in July of 2015 for first degree murder in violation of 18 U.S.C. §§ 1153 and 1111, Big Eagle's attorney, Neil Fulton, filed a Motion for Mental Examination, Doc. 30, requesting that this Court order that Big Eagle undergo a mental examination pursuant to 18 U.S.C. § 4241(a) and (b). Counsel for the government, Jay Miller, did not oppose the motion. Doc. 30. On October 7, 2015, this Court granted the Motion for Mental Examination and directed that Big Eagle undergo a psychiatric or psychological examination conducted by licensed psychologist Dr. Scott Pribyl in Sioux Falls, South Dakota. Doc. 34.

On April 12, 2016, Big Eagle supplemented his Motion for Mental Examination, Doc. 35, with Dr. Pribyl's Psychological/Competency Evaluation, Doc. 35-1, as well as a competency evaluation conducted by licensed psychologist Dr. Krislea Wegner, Doc. 35-2. This Court held a competency hearing on April 26, 2016. Doc. 36. At the hearing, no objections were made to the

1

Court considering the reports of Dr. Pribyl and Dr. Wegner, and Big Eagle testified as the sole witness. For the reasons stated below, this Court finds that Big Eagle is competent to stand trial.

## I.     FACTS PERTINENT TO MOTION

Big Eagle's competence was first evaluated by Dr. Wegner, who interviewed Big Eagle on September 19, 2015, at the Hughes County Jail in Pierre, South Dakota, at the request of Big Eagle's attorney. Dr. Wegner also reviewed collateral records, including court documents, investigative materials, and Big Eagle's criminal, mental, medical, and school records. Doc. 35-2 at 1–2. Dr. Wegner's report consists of nine pages and briefly addresses Big Eagle's history on the following topics: family, mental health, education, legal, medical, and alcohol and other drug use. Doc. 35-2 at 2–5.

By the time of Dr. Wegner's evaluation, Big Eagle had been prescribed two medications, Sertraline[1] and Risperdal,[2] but he told Dr. Wegner that he had stopped taking Risperdal a few days prior to September 19, 2015. Doc. 35-2 at 3. Dr. Wegner estimated that Big Eagle had below average intelligence and noted that during the clinical interview he appeared anxious, had minimal eye contact, would easily lose focus, and, at times, had scattered thought. Doc. 35-2 at 2. Dr. Wegner's diagnostic impression of Big Eagle included Attention Deficit/Hyperactivity Disorder (combined type), schizoaffective disorder (depressive type), and social anxiety disorder. Doc. 35-2 at 5.

---

[1] Sertraline, also known as Zoloft, "is used to treat depression, obsessive-compulsive disorder (OCD), panic disorder, premenstrual dysphoric disorder (PMDD), posttraumatic stress disorder (PTSD), and social anxiety disorder (SAD)." Sertraline (Oral Route), Mayo Clinic, http://www.mayoclinic.org/drugs-supplements/sertraline-oral-route/description/drg-20065940 (last updated Jan. 1, 2016).
[2] "Risperidone is used to treat schizophrenia, bipolar disorder, or irritability associated with autistic disorder." Risperidone (Oral Route), Mayo Clinic, http://www.mayoclinic.org/drugs-supplements/risperidone-oral-route/description/drg-20067189 (last updated Jan. 1, 2016).

Dr. Wegner utilized six psychological tests that evaluated Big Eagle's malingering of reported symptoms, competence to stand trial, psychopathology and personality functioning levels, assertive and aggressive behaviors, personality disorders and general psychological functioning, and abnormal personality traits. Doc. 35-2 at 1, 6–8. Results suggested that Big Eagle's malingering of symptoms was "highly improbable," that he had low levels of assertive behavior, and that he had a generally passive and depressive personality. Doc. 35-2 at 6–8. Dr. Wegner tested Big Eagle's competency to stand trial with sixty-one questions—of which he answered fifty-seven correctly—and on scales measuring understanding, reasoning, and appreciation. Doc. 35-2 at 4. Dr. Wegner concluded that Big Eagle "ha[d] a basic understanding of courtroom proceedings," but his scores on reasoning and appreciation fell in the impairment range. Doc. 35-2 at 6. Dr. Wegner reasoned that Big Eagle had difficulty focusing on some questions, would occasionally ask for questions to be repeated, and, on occasion, would take long pauses before answering questions. Doc. 35-2 at 6. Dr. Wegner opined that Big Eagle's ability to communicate and convey information was "quite impaired" and that he "did demonstrate some responses that would suggest psychotic impairment." Doc. 35-2 at 7.

In Dr. Wegner's professional opinion, Big Eagle did not possess the current capability to competently stand trial for the following reasons: "(1) his diminishing capability for reciprocal, emotional interpersonal interactions, (2) inability to retain/sustain focus and comprehension of information for learning/understanding relation to court proceedings, (3) diagnosed with mental illnesses . . . that are organic in nature with specific problems in executive functioning, diminished ability for accurate perceptions of his environment and a disordered thought process." Doc. 35-2 at 8–9. Dr. Wegner's opinion was premised on Big Eagle's "capabilities, at present time, given his untreated mental illness." Doc. 35-2 at 8–9.

3

Big Eagle then met with Dr. Pribyl at the Minnehaha County Jail in Sioux Falls on two occasions: once on November 28, 2015 for three hours and again on December 2, 2015 for two hours and fifteen minutes. Doc. 35-1 at 1. Dr. Pribyl reviewed various documents in preparation for Big Eagle's clinical interview, including the referral, investigative data, court documents, and medical, mental health, and student records. Doc. 35-1 at 1. At the time of Dr. Pribyl's meeting with Big Eagle, Big Eagle reported he last took Risperdal in September of 2015 but that he had been taking Sertraline on a regular basis. Doc. 35-1 at 5–6. During their meetings, Dr. Pribyl observed that Big Eagle did not appear anxious, understood the purpose of their meetings, and was oriented to person, time, and place. Doc. 35-1 at 2–3. Dr. Pribyl's report totals twenty-seven pages and details information on the following topics: background information, mental status and behavioral observations, medical and mental health history, alcohol and drug history, legal history, educational and employment history, child and family information, relationships, collateral data, testing results, diagnostic impressions, competency issues, instant offense information, and case analysis and discussion. Doc. 35-1 at 2–27. Dr. Pribyl had the following diagnostic impressions of Big Eagle: major depressive disorder, with intermittent psychotic features that can be effectively treated with Sertraline; alcohol, cannabis, and prescription use; borderline, dependent, and schizotypal personality traits; and nonadherence to medical treatment. Doc. 35-1 at 20.

Dr. Pribyl employed various protocols in his evaluation of Big Eagle, including five psychological tests that measured his mental state, verbal and non-verbal intelligence, multiphasic personality,[3] self-reported symptoms, and competency to stand trial. Doc. 35-1 at 3–24. Big Eagle's mental state score was within the acceptable range for a similarly-situated adult,

---

[3] The multiphasic personality testing—which is a 338-item, self-report measure—proved invalid and uninterpretable due to "indications of [Big Eagle's] over-reporting." Doc. 35-1 at 17.

4

and he showed an average IQ composite score of 98. Doc. 35-1 at 3, 17. Dr. Pribyl reported that the cognitive screening data suggests that Big Eagle has a "low average verbal or crystallized thinking abilities; high average nonverbal or fluid thinking abilities; [and] approximately average overall abilities." Doc. 35-1 at 17. The self-reported symptoms test—which is designed to assess potential distortions in the self-report of symptoms through eight primary scales—indicated that Big Eagle primarily ranked as either an "Honest Responder" or an "Indeterminate," excepting only one scale, Subtle Symptoms, as "Probable Feigning." Doc. 35-1 at 18–19.

The final test Dr. Pribyl performed assessed Big Eagle's competency to stand trial. Doc. 35-1 at 21–24. The report details Dr. Pribyl's examination of Big Eagle's ability to consult with counsel, factual understanding of the courtroom proceedings, rational understanding of the courtroom proceedings, and overall rational abilities. Doc. 35-1 at 21–24. Big Eagle correctly identified his attorney and his attorney's investigator and expressed that his attorney was helpful and meeting his expectations. Doc. 35-1 at 21. When asked who was in charge of court, Big Eagle said "the judge," and expressed an understanding that if he was found guilty, the judge would determine his sentence. Doc. 35-1 at 22. Big Eagle rightly characterized the prosecutors and jury's role, including that if the jury found him guilty that the judge would be the one to impose sentence. Doc. 35-1 at 22. Although Big Eagle answered two questions that suggested the possibility of some self-defeating motivation—that he would testify if his attorney told him to and that he would "go with" a plea agreement if the prosecution made a "good offer"—Dr. Pribyl reported that "there was no evidence of psychotic reasoning." Doc. 35-1 at 23.

Dr. Pribyl opined that "the clinical impressions and cognitive screening data do suggest that [Big Eagle] has the ability to consult with counsel, to have an adequate factual

5

understanding of the Court and Courtroom processes, and that he has the ability to relate to his counsel as long as he maintains his current antidepressive medication, Sertraline." Doc. 35-1 at 26. Based on that evaluation, Dr. Pribyl summarized that Big Eagle showed no impairment across all competency scales. Dr. Pribyl concluded his report with the following:

> Based on the clinical interview, current psychological testing, the review of extensive previous medical and mental health records and the Evaluation of Competency to Stand Trial – Review, it is this psychologist's opinion that as of 12-02-16 that Corbyn Dayne Big Eagle was not suffering from a mental disease or defect that would render him to be mentally incompetent to the extent that he would be unable to understand the nature and consequences of the proceedings against him, or to properly assist in his defense with his defense attorney, Neil Fulton. This psychologist did observe Corbyn at times, to have fairly lengthy latencies before responding to some, but certainly not all, questions. When Corbyn did respond, his answers were rational and his thoughts appeared to be connected and goal directed. As long as Corbyn takes his prescribed psychotropic medication, abstains from the abuse of other mood altering substances, and is given adequate time to listen, think and then respond, this psychologist believes that Corbyn is competent to stand trial.

Doc. 35-1 at 26–27.

Big Eagle testified before this Court at the competency hearing. Doc. 36. Big Eagle is twenty-two years of age and described growing up in Dupree and Cherry Creek, and living recently in Eagle Butte, South Dakota. He was raised by his great aunt and great uncle (whom he calls his grandparents), both of whom passed away when he was seventeen. Big Eagle has five or six half-siblings that he does not stay in contact with, but he does maintain a close relationship with his biological mother. Big Eagle testified that he completed the ninth grade at Dupree and described how school and reading were difficult for him due to his inability to concentrate for extended periods and follow teachers' directions. He easily made friends in school and participated in basketball and track, but was not academically eligible for games or meets. According to Big Eagle, he was not in any special education classes in school, but recalls being in an Individualized Education Program from around the fifth grade. Big Eagle testified

6

that he still has significant problems reading and concentrating. He testified that making friends is harder as an adult and that he drinks alcohol to cope with the anxiety he experiences from being around other people. He has maintained one job in his life—working construction on concrete foundations—but left that job in 2013 because he was grieving the loss of a still-born brother. Big Eagle testified that after his brother's death, he did not want to be around family because he feared losing people close to him.

Big Eagle has experienced mental health issues and has tried to hurt himself in the past. Since 2011, he has attempted suicide approximately fifteen times, has beat his head against objects, has scars on his neck and left-arm from self-inflicted wounds, drank bleach and mercury in attempts to kill himself, and attempted to overdose on cough medication. Big Eagle has undergone treatment at various facilities, including Rapid City Regional Health, Avera Behavioral Health Center in Sioux Falls, and outpatient treatment at Four Bands Healing Center in Eagle Butte. Big Eagle testified that he was prescribed medication, Sertraline and Risperdal, for the first time in 2012. Although he has voluntarily stopped taking those medications in the past, Big Eagle testified that he wants to continue taking Sertraline because it helps him with his depression. He testified that he had quit taking Sertraline[4] a couple days prior to Dr. Wegner's evaluation and that he resumed taking that medication a week later. He is currently taking Sertraline in the mornings, once every day, and was on that medication during his meetings with Dr. Pribyl.

Big Eagle also testified that he has heard voices and experiences premonitions—visions or dreams of a lucid nature that would later come true—for several years, the most recent

---

[4] This testimony directly contradicts Dr. Wegner's report which states that Big Eagle stopped taking Risperdal, rather than Sertraline, a few days prior to Dr. Wegner's clinical interview in September of 2015. Doc. 35-2 at 3. Big Eagle also told Dr. Pribyl that he last took Risperdal in September of 2015. Doc. 35-1 at 5.

7

occurring in January of 2016. Most of the premonitions Big Eagle experiences are upsetting or would lead him to drink or attempt suicide. According to Big Eagle, he has not had any premonitions about his case, has never acted out on the voices, and has the ability to recognize the negative voices are not real. Big Eagle also testified that he associates cutting his hair with the occurrence of unfortunate events, and because of this, he has only cut his hair approximately five times in the past seven years.

When questioned about legal proceedings, Big Eagle acknowledged that his attorney has talked about trial rights with him on multiple occasions. Big Eagle testified he understands that his attorney's role is to help him, and he correctly identified the person in the courtroom who is the prosecutor, but was unable explain the prosecutor's role in his testimony, although he had done so previously to Dr. Pribyl. Big Eagle initially testified that he believed the judge's role was to decide his guilt or innocence and impose sentence, but was unable to articulate what the jury's role would be. Big Eagle testified that he could not remember what a plea agreement is, what sentence he is facing, or how the Sentencing Guideline Manual applies in his case. However, Big Eagle recognized that if he goes to trial, the prosecutor has the burden to prove what happened and he decides if he wants to testify. On cross-examination, Big Eagle recalled discussing legal proceedings with Dr. Pribyl. During his discussions with Dr. Pribyl, Big Eagle acknowledged that he knew the prosecutors role in his case,[5] knew the jury's role would be to determine whether he was guilty of the crime charged, and that the judge would be the one to sentence him if the jury found him guilty.

---

[5] Big Eagle testified that he told Dr. Pribyl that the prosecutor's role was to "make you look as guilty as possible."

## II. COMPETENCY STANDARD

Under 18 U.S.C. § 4241(a), a district court is required to grant a motion requesting a competency hearing when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." After a competency hearing, if a court finds by a preponderance of the evidence that the defendant meets the standard set forth in § 4241(a), the defendant will be found incompetent. 18 U.S.C. § 4241(d); see also United States v. Casteel, 717 F.3d 635, 641 (8th Cir. 2013) (stating that a defendant must be competent throughout all stages of prosecution). The "[p]resence of a mental illness does not equate with incompetency to stand trial," United States v. Whittington, 586 F.3d 613, 618 (8th Cir. 2009) (internal quotation marks and quotation omitted), thus the United States Court of Appeal for the Eighth Circuit has stated that "[t]here are two elements to a competency finding: (1) whether 'the defendant has a rational as well as factual understanding of the proceedings against him,' and (2) whether the defendant 'is able to consult with his lawyer with a reasonable degree of rational understanding,'" United States v. Ghane, 593 F.3d 775, 780 (8th Cir. 2010) (quoting United States v. Denton, 434 F.3d 1104, 1112 (8th Cir. 2006)); see also Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). "The district court may base its competency decision on numerous factors, 'including expert medical opinions and the court's observations of the defendant's demeanor.'" Whittington, 586 F.3d at 618 (quoting United States v. Robinson, 253 F.3d 1065, 1067 (8th Cir. 2001)). The determination of whether a defendant is competent to stand trial is left to the sound discretion of the district court, Whittington, 586 F.3d at 617, and the defendant bears the burden by a preponderance of the evidence of demonstrating that he is not competent to stand trial, United

States v. Mueller, 661 F.3d 338, 352 (8th Cir. 2011) (quoting Denton, 434 F.3d at 1112); 18 U.S.C. § 4241(d).

## III. DISCUSSION

Based on the record, evidence presented at the competency hearing, and this Court's observations of Big Eagle, this Court finds by a preponderance of the evidence that Big Eagle is mentally competent to stand trial and to participate in the judicial proceedings to determine the validity of the criminal charges filed against him. Although both experts are capable professionals, this Court views Dr. Pribyl's evaluation as more complete and more reliable than Dr. Wegner's. Dr. Pribyl met with Big Eagle in person for over five hours, more thoroughly addressed Big Eagle's medical and mental history, evaluated Big Eagle while he was consistently taking Sertraline, and overall provided a more comprehensive report than did Dr. Wegner. See United States v. Contreras, 816 F.3d. 502, 513–14 (8th Cir. 2016) (finding district court did not clearly err when it found defendant competent, in spite of conflicting reports, because district court relied on the more comprehensive of the two reports); United States v. DeCoteau, 630 F.3d 1091, 1096 (8th Cir. 2011) (stating that when presented with different conclusions from experts on a motion to determine competency that it is "certainly within a district court's province to choose one expert's opinion over a competing qualified expert's opinion" (internal quotation marks and quotation omitted)); see also Ghane, 593 F.3d at 781 (same). Moreover, Dr. Wegner's ultimate opinion was premised on the "untreated nature" of Big Eagle's current condition, whereas Dr. Pribyl evaluated Big Eagle after Big Eagle had not taken Risperdal for some time and had consistently resumed taking Sertraline. At the time of Dr. Pribyl's evaluation, Big Eagle did not exhibit signs of anxiousness and explained his ability to control the negative voices or premonitions he had experienced in the past. Dr. Pribyl expressed

no concern about Big Eagle's competence to stand trial, as long as he stays on the medication Sertraline. Finally, Big Eagle's IQ was determined to be 98 by Dr. Pribyl, a very functional level.

Big Eagle's testimony also leads this Court to determine that he is competent to stand trial. Big Eagle testified for over an hour and did not lose his train of thought. He was able to understand questions, responded appropriately, maintained concentration, and generally expressed himself clearly. Big Eagle stated that he currently takes Sertraline on a daily basis and wants to continue taking that medication because it suppresses his depressive symptoms. Big Eagle testified that he has had no premonitions about this case, has never acted out on a premonition before, and had learned to recognize the negative voices and can ignore them on his own. Big Eagle's testimony about his understanding of trial procedure was somewhat inconsistent. Big Eagle testified that he knows the role of his attorney, and generally knows the role of the prosecutor. Big Eagle confused the role of the jury and the judge in direct examination, but seemed to acknowledge a proper understanding on cross-examination. Big Eagle's overall testimony revealed that he is very capable of rational thought and is of near average intelligence. This Court thought Big Eagle to be honest throughout his testimony, except for answering his counsel's questions about the roles people have at trial where Big Eagle seemed to be purposefully opaque.

Surely Big Eagle has mental health issues, including having multiple suicide attempts and needing to take his mediation. However, Big Eagle has not met his burden to show by a preponderance of the evidence that he cannot rationally and factually understand the proceedings against him and that he is unable to consult with his attorney in a rational manner.

## IV. CONCLUSION

Therefore, it is hereby

ORDERED that Big Eagle is competent to stand trial.

DATED this 6th day of May, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE